IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CARLA BLAKE                                                                                  PLAINTIFF

V.                                                             CIVIL ACTION NO. 1:17-CV-89-SA-DAS

DON LAMBERT, and
PRENTISS COUNTY                                                  DEFENDANTS

ORDER AND MEMORANDUM OPINION

Carla Blake initiated this action on June 12, 2017, by filing her Complaint [1] against Prentiss County, Mississippi, and Don Lambert, a Prentiss County School Attendance Officer. Judgment, as to liability only, has been entered against Lambert in his individual capacity. *See* Order and Judgment [48]. Prentiss County has now filed a Motion for Summary Judgment [66], requesting dismissal of all claims against it. The Motion [66] has been fully briefed, and the Court is prepared to rule.

*Factual and Procedural Background*

Sometime before September 2013, Blake had temporary custody of her nephew, S.W., a minor school-age child. S.W. was enrolled in Prentiss County Public Schools, and Blake was listed as S.W.'s contact in school records. On September 5, 2013, Lambert mailed a form letter to Blake informing her that S.W. had five unexcused absences, that she was responsible for making sure S.W. attended school, and that continued accrual of unexcused absences could lead to potential penalties under Mississippi Code § 37-13-91. S.W. continued to accrue unexcused absences. In January of 2014, Lambert contacted Blake by phone, and Blake informed him that she no longer had custody of S.W. and was not S.W.'s caregiver. Blake also informed Lambert that S.W. was now in the custody of his mother, Tracey Perry. Blake gave Perry's contact information to Lambert. According to Blake, Lambert apologized for the confusion and said that he would follow

up with Perry. Lambert subsequently talked with Perry by phone. Perry apparently confirmed that she was S.W.'s mother, and informed Lambert that S.W. was sick. Lambert informed Blake and Perry that they needed to contact the school to update the official records as to S.W.'s custody.

On June 10, 2014, Lambert swore out a "General Affidavit" for Blake's arrest, and filed the affidavit in Prentiss County Justice Court. The affidavit charged Blake with contributing to the delinquency of S.W. by refusing or willfully failing to make sure that S.W. attended school, in violation of Mississippi Code §§ 37-13-91, 97-5-39(1). According to school records, S.W. was absent from school at least sixteen days during the 2013-2014 school year.

Based on Lambert's affidavit, the Prentiss County Justice Court Judge issued a warrant for Blake's arrest. Pursuant to this warrant, a Prentiss County Deputy Sheriff arrested Blake at her home on June 12, 2014. Blake was then booked into the Prentiss County Jail, strip searched, and detained in a holding cell for a short period until she was able to arrange bond.

On June 17, 2014, Lambert filed an affidavit in Prentiss County Justice Court requesting dismissal of the charges against Blake stating, "I filed an affidavit on the wrong person by mistake." The Justice Court Judge subsequently dismissed the charges against Blake.

Blake then initiated this action. In her Complaint [1], Blake alleged that Lambert violated her constitutional rights because the affidavit he swore out against her was facially invalid, that Lambert intentionally withheld exculpatory information, and that Lambert recklessly caused Blake's arrest without probable cause. After this Court denied Lambert's request for qualified immunity, Lambert appealed. On appeal, the Fifth Circuit affirmed the denial of qualified immunity as to Blake's *Malley* claim but reversed as to Blake's *Franks* claim. In accordance with the Fifth Circuit's opinion, this Court filed an Order and Judgment [48], specifically entering "summary judgment against Defendant Lambert in his individual capacity for Plaintiff Blake's

2

claim that Lambert violated her Constitutional rights under the Fourth Amendment pursuant to *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092. With liability decided, the Plaintiff's *Malley* claim will be set for a trial on damages following the resolution of the Plaintiff's claims against Prentiss County."

In addition to her claims against Lambert, Blake's Complaint [1] asserts a claim against Prentiss County. Specifically, Blake avers that the County is liable for "maintaining a policy, practice, custom or usage which authorized and mandated subjecting detainees being held on non-violent and non-drug offenses to humiliating strip searches in the absence of reasonable suspicion or probable cause while briefly detained in a holding cell and awaiting bond." In other words, she asserts that the County's policy pursuant to which she was strip searched is unconstitutional as it relates to certain classes of persons taken into custody. The County now seeks summary judgment on that claim.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts

exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).

*Analysis and Discussion*

As noted above, Blake's claim against the County concerns the constitutionality of the County's policy pursuant to which the visual body cavity search was conducted. Although the parties disagree as to certain issues, the circumstances surrounding the strip search are not in dispute. As stated by the County:

> The Prentiss County Jail facility has a Contraband Prevention Policy in place which requires that all incoming detainees/arrestees in the booking area of the Jail be searched for the safety and security of other inmates, jailers, and members of the public who enter the facility (*e.g.* jail staff, healthcare professionals, clergymen, attorneys, etc.). Therefore, upon her arrival to the Prentiss County Jail, the Plaintiff was strip searched in accordance with Prentiss County Jail's policies and procedures.

[67], p. 1. As to the specifics of the search, the County states:

> Once in the strip search room, the single female jailer instructed the Plaintiff to disrobe, squat down, and cough so that the jailer could conduct a visual inspection of the Plaintiff for prohibited contraband and weapons. The strip search lasted approximately two to three minutes, was conducted by the single female jailer in a windowless room, and no one (other tha[n] the single female jailer) could see the Plaintiff or into the room during the strip search.

[67], p. 3. Also of critical importance is the fact that Blake was never taken into the Jail's general population, nor was she ever considered for placement in the facility's general population. She was thereafter released from custody once bond was arranged.

Again, neither party disputes the above-referenced underlying facts. However, while Blake contends that she was subjected to an unconstitutional search, the County asserts that it is entitled to summary judgment because the search was related to legitimate penological concerns and therefore was in compliance with the Fourth Amendment.

Blake makes her claim pursuant to 42 U.S.C. § 1983. Section 1983 makes liable "every person" who, under color of state law, violates federal constitutional rights. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). For this purpose, municipalities, such as Prentiss County, qualify as "persons." *Id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

However, municipalities "cannot be held vicariously liable for the actions of their officials. Direct liability is instead required." *Jauch v. Choctaw Cty.*, 874 F.3d 425, 435 (5th Cir. 2017) (citing *Monell*, 436 U.S. at 692-93; *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)). "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'" *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Here, there is no dispute as to the first two elements—the existence of a policy of which the County's policy makers had actual or constructive knowledge. Prentiss County instead contends that its policy does not violate the Fourth Amendment and that Blake, therefore, cannot establish *Monell* liability.

    *I.*    *Constitutionality of Prentiss County's Policy*

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. "To determine whether the search was reasonable, and thus

5

constitutionally permissible, the Court must balance 'the need for a particular search against the invasion of personal rights that the search entails,' considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Mabry v. Lee Cty.*, 168 F. Supp. 3d 940, 945 (N.D. Miss. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 576-77, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)) (affirmed in *Mabry v. Lee Cty.*, 849 F.3d 232 (5th Cir. 2017). "In striking this balance, the Supreme Court has utilized various different standards or tests, depending on the factual scenario presented in each case." *Id.* (citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989)).

Of particular importance in this case is the Supreme Court's holding in *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2011). In *Florence*, the petitioner was stopped in his automobile by a state trooper. *Id.* at 323. The trooper's computer system indicated that there was an outstanding warrant for the petitioner's arrest, and he therefore took the petitioner into custody. *Id.* The petitioner was held in custody at the Burlington County Jail for six days before he was transferred to Essex County Correctional Facility, which was, at least at the time, the largest county jail in New Jersey. *Id.* at 324. The petitioner was subjected to extensive searches at both facilities. *Id.* The day after the petitioner was transferred to Essex, the charges against him were dropped, and he was released from custody. *Id.*

Specifically, at the Burlington County Jail, the "procedures required every arrestee to shower with a delousing agent. Officers would check arrestees for scars, marks, gang tattoos, and contraband as they disrobed." *Id.* At the Essex County Correctional Facility, "all arriving detainees passed through a metal detector and waited in a group holding cell for a more thorough search. When they left the holding cell, they were instructed to remove their clothing while an officer

6

looked for body markings, wounds, and contraband. Apparently without touching the detainees, an officer looked at their ears, nose, mouth, hair, scalp, fingers, hands, arms, armpits, and other body openings." *Id*.

The petitioner alleged that the searches to which he was subjected were unconstitutional. *Id*. After noting previous cases holding that "[t]he need for a particular search must be balanced against the resulting invasion of personal rights[,]" the Supreme Court noted that "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process. The admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself." *Id*. at 327, 330 (citations omitted). Additionally, "[d]etecting contraband concealed by new detainees . . . is a most serious responsibility. Weapons, drugs, and alcohol all disrupt the safe operation of a jail." *Id*. at 332. The Court also emphasized that "[p]eople detained for minor offenses can turn out to be the most devious and dangerous criminals." *Id*. at 334. Ultimately, after balancing the legitimate penological interests of the facilities with the petitioner's privacy rights, the Supreme Court held that "the search procedures at the Burlington County Detention Center and the Essex County Correctional Facility struck a reasonable balance between inmate privacy and the needs of the institutions." *Id*. at 339.

>Here, relying on *Florence*, Prentiss County asserts that its strip search policy:
>
>is reasonably related to the legitimate penological interest of the Jail[']s duty to protect the safety and security of the inmates, jailers, and others who enter the facility. The Prentiss County Jail administrator decided to implement the strip search policy based on the unique safety concerns brought on by the layout of the Jail (i.e. the small booking area), the interaction and potential for the exchange of prohibited contraband between detainees/arrestees in the small booking area, prior incidents involving non-violent non-drug detainees who were found to be concealing prohibited contraband, and the murder of the neighboring Lee County jailer who failed to conduct such a stringent search.

[67], p. 11. In other words, the County contends that its policy was designed to address the exact safety concerns deemed legitimate by the Supreme Court in *Florence*. On the other hand, Blake contends that the County's argument is overly generalized and misses the mark. In particular, she asserts that, in *Florence*, the Supreme Court only considered a search in the context of a detainee *who was to be placed in the facility's general population*. Here, there is no contention that Blake was considered for placement in the Prentiss County Jail's general population. There is likewise no contention that Prentiss County's policy makes any distinction whatsoever based upon whether a particular detainee will be considered for placement in the general population. Consequently, according to Blake, while *Florence* is generally instructive as to the applicable standard, it is not directly on point.

In further support of her position, Blake cites a recent case where the Tenth Circuit Court of Appeals analyzed the constitutionality of a similar strip search policy. *See Hinkle v. Beckham Cty. Bd. of Cty. Comm'n*, 962 F.3d 1204 (10th Cir. 2020). *Hinkle* involved a convoluted set of facts which ultimately culminated in the plaintiff, a former police chief, being arrested for allegedly stealing a trailer. *Id*. at 1210-15. The plaintiff was then subjected to a visual body cavity search. *Id*. at 1214-15.

In addition to asserting a claim for false arrest, the plaintiff in that case alleged that Beckham County's policy requiring a visual body cavity strip search of all detainees violated the Fourth Amendment. Under Beckham County's policy, "jailers strip searched incoming inmates at the very beginning of the booking process, before sitting down at the desk to begin the booking paperwork and before knowing where the inmate would be housed in the facility." *Id*. at 1236. Stated differently, the policy was "to strip search *all* detainees." *Id*. (emphasis added).

8

Finding that Beckham County's policy was unconstitutional, the Tenth Circuit held "[u]nder *Florence*, the jail could (1) decide that [the plaintiff] 'will be' housed in the jail's general population, and (2) then strip search him before placing him in the general population." *Id*. at 1237. However, the court noted that, by subjecting the plaintiff to a strip search before deciding that he would be placed in the jail's general population, Beckham County "set the cart before the horse[.]" *Id*. The Tenth Circuit then emphasized several portions of the Supreme Court's *Florence* opinion:

> In *Florence*, the Court repeatedly stressed that the strip search comes after the facility determines that the detainee "will be" placed in general population. *Id*. (explaining that 'the controversy [in *Florence*] concern[ed] whether every detainee who will be admitted to the general population may be required to undergo a close visual inspection while undressed'); *id*. at 325-26, 132 S. Ct. 1510 (explaining again that "[the] Court granted certiorari to address" "whether the Fourth Amendment requires correctional officials to exempt some detainees who will be admitted to a jail's general population from the searches here at issue"); *id*. at 335, 132 S. Ct. 1510 ("Reasonable correctional officials could conclude these uncertainties [about whether a particular detainee is dangerous] mean they must conduct the same thorough search of everyone who will be admitted to their facilities."); *id*. at 338, 132 S. Ct. 1510 (accepting the jail officials' argument that "the Constitution must not prevent [detention officials] from conducting [strip searches] on any suspected offender who will be admitted to the general population in their facilities"); *id*. at 338-39, 132 S. Ct. 1510 (explaining the limits of *Florence*'s ruling and commenting that "[t]his case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees"). In other words, the "will be" condition precedes the strip search, which itself precedes placing the detainee in the jail's general population. And the Court's "will be" condition to strip searches makes perfect sense—absent admitting the detainee to the jail's general population, the jail would have no need to protect the new detainee, the existing detainee population, and the detention staff from infectious diseases, rival gang members, weapons, or contraband.

*Hinkle*, 962 F.3d at 1237. Blake asserts that the Court should adopt the same rationale applied by the Tenth Circuit in *Hinkle*.

In analyzing these arguments, the Court again emphasizes the undisputed facts of this case. It is undisputed that Prentiss County's policy, like the policy at issue in *Hinkle*, requires *all* detainees be strip searched, regardless of the offense for which they were arrested and regardless

9

of whether the detainee will be placed in the facility's general population. Additionally, Prentiss County has admitted that it did not have an independent basis—such as reasonable suspicion or probable cause—to subject Blake to a strip search.[1]

Although the Supreme Court's holding in *Florence* is generally instructive, the Court agrees with Blake's contention that the County's reliance on *Florence* alone misses the mark. In this Court's view, the Supreme Court made clear in *Florence* that it intended the reach of its opinion to be limited. This intent is illustrated throughout the opinion. First, the Supreme Court specifically noted that it granted *certiorari* to address "whether the Fourth Amendment requires correctional officials to exempt some detainees *who will be admitted to a jail's general population* from [certain] searches." *Florence*, 566 U.S. at 325-26 (emphasis added). Furthermore, Section IV of the opinion specifically provides that "[t]his case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held *without assignment to the general jail population and without substantial contact with other detainees*. . . The accommodations provided in [such] situations *may* diminish the need to conduct some aspects of the searches at issue." *Id.* at 339 (emphasis added).[2] In a concurring opinion, Chief Justice Roberts also noted that the Court's holding may not apply in every circumstance, specifically providing that "[t]he Court makes a persuasive case for the general applicability of the rule it announces. The Court is nonetheless wise to leave open the possibility of exceptions, to ensure that we 'not embarrass the future.'" *Id*. at 340.

Additionally, while not binding, the Court finds the Tenth Circuit's rationale in *Hinkle* to be persuasive. As noted by the Tenth Circuit, the justifications for permitting body cavity strip

---

[1] The County made this admission in its deposition which was conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See* [85], Exhibit 2.

[2] The Court recognizes that Section IV of the Supreme Court's opinion was joined only by four Justices. However, this Court nevertheless finds its analysis instructive.

searches set forth by the Supreme Court in *Florence*, such as granting deference to correctional officials to take steps to maintain order and prevent the introduction of contraband, are not necessarily applicable when the detainee will not be placed in the facility's general population. Perhaps tellingly, although Blake relied heavily on *Hinkle* in her Response [86], Prentiss County failed to rebut those arguments in any fashion whatsoever in its Reply [91].

Ultimately, having considered the explicit language in *Florence* and taking into account the rationale contained therein, as well as the analysis by the Tenth Circuit in *Hinkle*, the Court rejects Prentiss County's reliance upon *Florence* to justify its strip search policy. Instead, the Court specifically finds that *Florence* does not protect Prentiss County's policy of strip searching *all* detainees, regardless of whether the detainees will be placed in the facility's general population. Consequently, Prentiss County is not entitled to summary judgment on that issue.

*II.     Reasonableness of the Search*

Although finding that the County's policy is not sanctioned by *Florence*, the Court still must consider whether the search of Blake ran afoul of the Fourth Amendment. *See*, *e.g.*, *Hinkle*, 962 F.3d at 1238 ("Having concluded that *Florence* does not authorize the County's strip-search policy, we must still decide whether [the plaintiff] suffered an unreasonable search under the Fourth Amendment."). In order to ultimately prevail on her claim, Blake must show that the specific search to which she was subjected was unreasonable. *See*, *e.g.*, *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991) (holding that, in order to prevail on a Section 1983 claim in this context, a plaintiff must personally be subjected to an illegal search or seizure). Stated differently, regardless of the constitutionality of the policy itself, if Blake was not herself subjected to an unreasonable search, she cannot prevail on her claim against Prentiss County. *Id.*; *see also Hinkle*, 962 F.3d at 1238.

11

Specifically concerning inmate searches, "a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Mabry*, 849 F.3d at 236 (quoting *Florence*, 566 U.S. at 326). In *Mabry*, the Fifth Circuit specifically noted the Supreme Court's language in *Florence* that "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response . . . courts should ordinarily defer to their expert judgment in such matters." *Id*. (quoting *Florence*, 566 U.S. at 328 (citation omitted)). The Fifth Circuit further noted that *Florence* "set up a high hurdle for inmates challenging the constitutionality of searches." *Id*. However, "substantial evidence could demonstrate that a correctional strip search policy is an exaggerated response to security concerns when, compared to the facts presented in *Florence*, the need for such a policy is lower, the justification weaker, the intrusiveness higher, or an alternative, less invasive policy more feasible." *Id*.

On this point, Prentiss County asserts that the "strip search of the Plaintiff was reasonably related to a legitimate penological interest — the safety and security of the jail inmates and staff[.]" [91], p. 2. Additionally, the County states that "[t]he search was conducted as a result of the specific conditions present during the Plaintiff's booking — *i.e.* the Plaintiff was an unknown individual to Prentiss County, who came in close proximity with other detainees in the holding area, and who could have possessed or procured dangerous and prohibited contraband." [91], p. 11. On the other hand, Blake relies on the County's admission that there was no independent suspicion or probable cause to support the search. In other words, the search was conducted pursuant to the County's above-referenced strip search policy—not because of any particularized reason associated with Blake. She asserts that this fact undercuts the County's stated safety concerns.

The Court is well-aware of the competing interests in this case. On the one hand, the Court is cognizant that deference should be granted to the judgment of correctional officials. *See*, *e.g.*, *Mabry*, 849 F.3d at 236. Such deference is undoubtedly necessary in order to protect the safety of jail inmates and staff members. On the other hand, however, that deference is not without limitations. *Id.* (holding that a plaintiff may proceed on claims of this nature but "the burden is on the plaintiff to prove with substantial evidence that the challenged search does not advance a legitimate penological interest.").

Although recognizing the heavy burden that Blake bears in order to prevail on her claim, the Court nevertheless finds that summary judgment is not proper. In addition to emphasizing that she was arrested on a non-violent offense and that the County admits it had no individualized reasonable suspicion or probable cause for the search, Blake also notes that she spent only 36 minutes in the booking area prior to being released. The Court finds that this fact, at least at this stage in the proceedings, weighs in Blake's favor. Furthermore, although the County states in its Memorandum [91] that Blake "came in close proximity with other detainees in the holding area," Blake testified that, when she walked past other detainees, she was escorted by County personnel, and there was no testimony that she ever made contact with any of these individuals. *See* [85], Exhibit 3, p. 29-31. In addition to these facts, the Court notes that it is unaware whether any of the detainees which she walked past were ever placed in the general population. That unknown is, in the Court's view, important, as it could impact whether the search advanced a legitimate penological interest.

As noted above, the Court is aware that Blake bears a heavy burden. However, this Court's reading of *Florence* and *Mabry* is such that, while many, if not most, inmate searches should be upheld, some searches *may* violate the Fourth Amendment. To grant summary judgment in this

case—where there are unresolved questions of fact regarding the detainee's short amount of time in custody, where there was admittedly no individualized reasonable suspicion or probable cause, and where the decision had not been made to place the detainee in the facility's general population—would, in this Court's view, essentially eliminate any exceptions to the general rule. Consequently, taking into account the specific facts of this case and the particular search at issue, the Court finds that Blake has come forward with sufficient evidence to preclude summary judgment.

*Conclusion*

For the reasons set forth above, Prentiss County's Motion for Summary Judgment [66] is DENIED.

SO ORDERED, this the 12th day of January, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE